IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GALLATIN FUELS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 02-2116 |
| | ) |
| WESTCHESTER FIRE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION and ORDER OF COURT

The factual and procedural details of this case are well known to the parties, and I need not repeat them in detail here. In short, Plaintiff, Gallatin Fuels, Inc. ("Plaintiff" or "Gallatin"), seeks payment under an insurance policy issued by Defendant Westchester Fire Insurance Company ("Defendant" or "Westchester") to Mon View Mining Corporation ("Mon View") for mining equipment that was destroyed or rendered unrecoverable on April 8, 2002 when the mine in which it was being used returned to its natural water level when the power to the mine was shut off after Mon View failed to pay outstanding utility bills. Gallatin was named as a loss payee under the policy. Gallatin also alleges that Westchester's actions constituted bad faith in violation of Pennsylvania law. Pending are five Motions in Limine and one Motion to Strike filed by Defendant (Docket Nos.122-125, 140) and

three Motions in Limine filed by Plaintiff (Docket Nos. 130, 132, 134).[1]  The Motions are now ripe for review, and I have considered them in light of the appropriate evidentiary standards.  After careful consideration, the Motions in Limine are granted in part and denied in part as set forth more fully below.

### I.  PLAINTIFF'S MOTIONS

**A. EVIDENCE REGARDING "ADVICE OF COUNSEL" AS A DEFENSE**

Plaintiff has moved to exclude documents, testimony, evidence and argument regarding the substance of any opinion or guidance provided by counsel to Westchester or its representatives in connection with the claim at issue.  Plaintiff also seeks an order excluding evidence or argument regarding the substance of any investigation of the claim not reflected in the redacted claims files of claims handlers Brian Ferguson and Charles Dickerson.  (Docket No. 130).  Plaintiff argues that this evidence is inadmissible because Defendant has not invoked "advice of counsel" as a defense and has refused to produce any documents or information containing advice of counsel and/or developed by or at the guidance of counsel.  Pl.'s Br. (Docket No. 131) at 1.

Plaintiff's Motion is granted to the extent that it seeks to exclude as evidence any documents or other information that Westchester has withheld from Plaintiff as privileged, including, but not limited to, the redacted portions of Mr. Ferguson's and Mr. Dickerson's claims files.  Westchester also is precluded from raising the defense of "advice of counsel" at trial.  This means that Westchester cannot argue

---

[1] The parties also have filed three motions in limine challenging certain proposed expert testimony.  I will address these expert motions in limine in separate opinions.

or present any evidence that advice of counsel influenced the manner in which it handled Gallatin's claim.  See Mueller v. Nationwide Mut. Ins. Co., No. GD94-4466 & GD94-18921, 1996 WL 910155, at *6 (Pa. Ct. C.P. May 22, 1996) ("A party is not permitted to use the attorney-client privilege as a sword and as a shield.").

This ruling, however, shall not preclude Defendant from introducing any admissible evidence that was disclosed or otherwise made known to Plaintiff simply because such information also may have been contained within a privileged attorney-client communication.  Similarly, my ruling shall not preclude Defendant from pursuing otherwise appropriate defenses other than "advice of counsel" unless Defendant attempts to prove a defense by disclosing or describing an attorney-client communication or otherwise takes an affirmative step to place its attorney's advice at issue.  See Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 863 (3d Cir. 1994).  To the extent Plaintiff's Motion seeks to exclude this type of evidence, it is denied.

**B. PROCEDURE FOR PRESENTATION OF CLAIMS FOR FEES**

In this case, Plaintiff has asserted a claim for attorney's fees pursuant to 42 Pa. Cons. Stat. Ann. § 8371.  In connection with that claim, Plaintiff has moved "in limine" for an Order declaring that the issue of whether or not attorney's fees should be awarded is a matter for the jury to decide but that the amount of fees recoverable shall be left to the Court.  (Docket No. 132).  Defendant agrees that the amount of attorney's fees recoverable, if any, is for the Court to determine following trial. Thus, Plaintiff's Motion is granted in this regard.  Plaintiff's Motion is denied,

however, to the extent it seeks a ruling that <u>whether</u> attorney's fees should be awarded in the first instance is a question for the jury.[2]

Plaintiff has not cited to any case law in support of its contention that whether to award attorney's fees under section 8371 is a jury question. The case law that does address this issue suggests that whether Plaintiff is entitled to attorney's fees is a question for the Court to decide following a jury verdict on the issues of bad faith and punitive damages. <u>See</u>, <u>e.g.</u>, <u>Klinger v. State Farm Mut. Auto. Ins. Co.</u>, 115 F.3d 230 (3d Cir. 1997) (upholding the trial judge's finding that the insured was not entitled to attorney's fees even though the jury had awarded the insured punitive damages under section 8371); <u>Polselli v. Nationwide Mut. Fire Ins. Co.</u>, 126 F.3d 524, 532 n.8 (3d Cir. 1997) (court may consider evidence of attorney's fees upon motion following trial); <u>Younis Bros. & Co. v. Cigna Worldwide Ins. Co.</u>, 882 F. Supp. 1468, 1475-76 (E.D. Pa. 1994) (insured not entitled to jury trial on issue of whether to award attorney's fees under section 8371).

Accordingly, Plaintiff may not present any evidence concerning attorney's fees or costs to the jury at trial. If the jury finds in favor of Plaintiff on its bad faith claim at trial, Plaintiff then may present evidence regarding attorney's fees to me for consideration.[3]

---

[2] I agree with Defendant that a motion in limine is not the proper procedural vehicle to raise this issue. Def.'s Resp. (Docket No. 153) at 1. Rather, Plaintiff's Motion is more akin to a procedural motion for order of trial presentation. Nevertheless, since Plaintiff has raised the issue and both parties' positions are before me, I will decide Plaintiff's Motion on its merits.

[3] In its Response to Plaintiff's Motion, Defendant proposes an "order of presentation" of evidence with respect to Plaintiff's bad faith claim as a whole. Def.'s Resp. (Docket No. 153) at 3-4. This proposed "order of presentation" encompasses issues well beyond the scope of Plaintiff's Motion, and, thus, I have not considered it here.

## C. EVIDENCE REGARDING NOTICE OF CANCELLATION OF POLICY PRIOR TO OCTOBER 25, 2002[4]

Plaintiff has moved to exclude documents, testimony, evidence and argument regarding notice to Gallatin of cancellation of the subject insurance policy prior to October 25, 2002. (Docket No. 134). It is undisputed that the Policy was canceled prior to April 8, 2002 (the date of loss) due to Mon View's non-payment of premiums. An issue in this case is when Gallatin learned of this cancellation.

Westchester does not dispute that the first notice Gallatin received <u>from Westchester</u> concerning the cancellation of the policy was an October 25, 2002 letter from Westchester's counsel, C. Michael Johnson. Thus, Plaintiff's Motion is granted to the extent it seeks to preclude Westchester from introducing evidence that it notified Gallatin prior to the October 25, 2002 letter. Gallatin's Motion is denied, however, to the extent it seeks an Order excluding evidence that Gallatin learned of the cancellation prior to October 25, 2002 from sources <u>other</u> <u>than</u> <u>Westchester</u>.

Plaintiff's arguments that my Order granting the instant Motion should extend to sources other than Westchester are without merit. First, Gallatin argues that Westchester's counsel, C. Michael Johnson, stipulated during the deposition of Westchester witness Charles Dickerson that Plaintiff did not receive notice of cancellation from any source prior to October 25, 2002. I disagree. The transcript of the deposition segment at issue reads as follows:

> Q. Was the October 25, 2002 letter from Mike Johnson the

---

[4] Although the title of Plaintiff's Motion refers to October 25, 200*5*, I assume this is a typographical error and that Plaintiff intended to refer to October 25, 200*2*, the date of the letter at issue.

> first suggestion <u>from Westchester Fire Insurance Company</u> that premiums were due under the policy from Gallatin Fuels?
>
> MR. JOHNSON: Objection to your framing of the question that it was due.
>
> THE WITNESS: Please restate your question?
>
> MR. JOHNSON: John, <u>we'll stipulate as you had previously had asked and had answered that that was the first time Gallatin Fuels had been made aware that the policy had been canceled</u>. That's the first time that they had been informed of the fact that to the extent they wish to have a formal response under the policy, that they were notified that they were given the option to pay the premium of the policy to invoke it and, therefore, receive it. That's the first time that information was conveyed to them.

Dickerson Dep. at 208, <u>quoted</u> in Pl.'s Motion in Limine at 1-2 (emphasis added). Although Mr. Johnson did not explicitly limit his "stipulation" to Westchester, the statement, when read in conjunction with the question immediately preceding it, clearly is so limited. Gallatin has not pointed to any evidence, and I find it extremely difficult to believe, that Mr. Johnson intended to go beyond the scope of this question and broadly stipulate as to notice, if any, Gallatin obtained from sources other than his client.

Second, Gallatin argues that the Court already decided this issue in a footnote to Magistrate Judge Mitchell's April 15, 2005 Report and Recommendation on summary judgment (Docket No. 104), which I adopted on May, 26 2005 (Docket No. 114). The footnote to which Plaintiff refers is contained in the "Facts" section of the

Report and Recommendation and pertains to Westchester's argument that a fax Gallatin received from Mon View on April 8, 2002 put Gallatin on notice regarding the policy cancellation. Report and Recommendation at 14, n.16. In the footnote, Magistrate Judge Mitchell responded to this argument as follows:

> Defendant argues that this fax put Gallatin on notice that the Westchester policy had been canceled. However, counsel for Westchester stipulated that a letter dated October 25, 2002 was the first notice of cancellation of the policy received by Gallatin. (Dickerson Dep. at 208, Pl.'s App. Part A).

Id. I disagree that this footnote constitutes a binding ruling that Plaintiff did not receive notice of cancellation from any source prior to October 25, 2002. As an initial matter, this statement occurs in passing in a footnote and was not central to the Court's summary judgment analysis. Even more importantly, the footnote is located in the fact section of the opinion deciding Defendant's summary judgment motions. At the summary judgment stage, the Court was required to view the facts in the light most favorable to Plaintiff as the non-moving party and, thus, could not accept Defendant's version of events as true.

In short, whether or not Gallatin received notice of the policy cancellation from sources other than Westchester prior to October 25, 2002 remains a question of fact for the jury to determine based on the evidence at trial. Thus, with the exception of evidence regarding Westchester itself, Plaintiff's Motion to exclude otherwise admissible evidence regarding this issue is denied.

## II. DEFENDANT'S MOTIONS

## A. **EVIDENCE OF DEFENDANT'S WEALTH**

Defendant has moved to exclude evidence of Defendant's wealth unless and until the Court rules that Plaintiff has presented sufficient evidence to create a jury issue on punitive damages (Docket No. 122). Defendant argues that evidence of its wealth is irrelevant to the question of compensatory damages and admission of such evidence, where only compensatory damages are in question, would be unfairly prejudicial. See Feld v. Merriam, 485 A.2d 742, 747 (Pa. 1984) (noting that although a defendant's wealth is relevant to set punitive damages, "[a] jury may not consider a defendant's wealth in setting compensatory damages. It is 'improper, irrelevant, prejudicial, and clearly beyond the legally established boundaries.'" (quoting Trimble v. Merloe, 197 A.2d 457, 458 (1964))). In its Response (Docket No. 152), Plaintiff agrees not to introduce at trial any information obtained in discovery or otherwise regarding Defendant's actual wealth unless and until such time the Court determines that sufficient evidence has been introduced at trial to warrant a finding in favor of Plaintiff's claim for punitive damages. Thus, Defendant's Motion is granted to this extent.[5] This ruling, however, shall not preclude Plaintiff from introducing evidence of the financial disparity between Plaintiff and Defendant in general (as opposed to Defendant's actual wealth) in support of its bad faith claim to the extent such evidence is relevant and is otherwise admissible. Defendant may

---

[5] Defendant suggests that the appropriate time to assess whether Plaintiff has introduced sufficient evidence to put the issue of punitive damages before the jury is at the close of Plaintiff's evidence. Because it is possible that Plaintiff may submit sufficient evidence of outrageous conduct prior to the close of its case, I decline to restrict Plaintiff to this time-frame. Rather, Plaintiff is free to request a ruling on this issue at such time during its case it believes that it has presented the requisite evidence.

raise appropriate objections, if any, to such evidence at trial.

### B. REPORTS AND RECOMMENDATIONS OF THE HON. ROBERT MITCHELL AND ANY RELATED COURT ORDERS AS TRIAL EXHIBITS

Defendant has moved to exclude the introduction at trial of Magistrate Judge Mitchell's Reports and Recommendations in this case as well as this Court's Orders concerning those Reports and Recommendations, including, but not limited to:

> The June 4, 2003 Report and Recommendation on Defendant's Motion to Dismiss, or in the alternative, for Judgment on the Pleadings (Docket No. 13) and the July 7, 2003 Court Order adopting the same (Docket No. 17);

> The March 11, 2004 Report and Recommendation on Defendant's Motion for Summary Judgment on Policy Cancellation (Docket No. 34) and the April 21, 2004 Court Order adopting the same (Docket No. 37); and

> The April 15, 2005 Report and Recommendation on Defendant's Motions for Summary Judgment (Docket No. 104) and the May 26, 2005 Court Order adopting the same (Docket No. 114).

(Docket No. 123).   Defendant's Motion is granted.

The probative value of this evidence, if any, is substantially outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury.  For example, the Reports and Recommendations view any disputed facts in the light most favorable to Gallatin, the non-moving party, and, in a number of instances, the Magistrate Judge found issues of material fact precluding judgment in favor of Defendant.  To admit the documents setting forth these rulings as exhibits would likely confuse the jury and may cause them to give greater deference to the

Reports' factual recitations than is due, prejudicing Defendant's ability to present its case fairly at trial.[6]

Moreover, even if relevant to Plaintiff's bad faith claim, as Plaintiff contends, Plaintiff does not need to introduce the actual documents at issue as exhibits at trial. Rather, the jury may be apprised of the Court's rulings and Defendant's actions through witness testimony, jury instructions, stipulation, or other appropriate means.

## C. <u>EVIDENCE OF INTENTIONAL DESTRUCTION OF THE SUBJECT PROPERTY</u>

Defendant has moved to exclude evidence at trial that Mon View intentionally destroyed Plaintiff's equipment. (Docket No. 124). This Motion is granted to the extent Plaintiff seeks to introduce evidence or argue at trial that the insurance claim at issue arose from Mon View's intentional destruction of the Plaintiff's mining equipment as opposed to Mon View's failure to pay its utility bills. To the extent such evidence is even relevant, I already have ruled in my May 26, 2005 Order granting Defendant's Motion to Strike that "to allow the plaintiff to contend at this point that Mon View's conduct was intentional would raise entirely different issues and is not appropriate." (Docket No. 114). This ruling, however, shall not preclude Plaintiff from responding to Defendant's affirmative defenses by introducing evidence at trial that Mon View interfered with Plaintiff's ability to recover its property from the mine, to the extent such evidence is relevant and otherwise

---

[6] This ruling does not mean that Defendant is free to relitigate any <u>legal</u> rulings contained in the Reports and Recommendations at issue as adopted by this Court. For example, Defendant may not argue that there could be "no external cause of loss" as a matter of law. <u>See</u> April 15, 2005 Report and Recommendation (Docket No. 104) at 23-24 (rejecting this argument).

admissible.[7]

### D. EVIDENCE THAT PLAINTIFF IS ENTITLED TO RECOVER IN EXCESS OF THE EQUIPMENT'S SCHEDULED VALUE

Defendant has moved to exclude evidence at trial that Plaintiff is entitled to recover on the policy any monies in excess of the $1,925,000 scheduled value of the mining equipment. (Docket No. 125). In support of its Motion, Defendant cites to this Court's prior ruling on Westchester's Motions for Summary Judgment that Gallatin's maximum allowable recovery under the policy cannot exceed $1,925,000. See April 15, 2005 Report and Recommendation (Docket No. 104) and May 26, 2005 Order of Court adopting the same (Docket No. 114). Defendant's Motion is unopposed and is granted.

This ruling pertains solely to evidence regarding Plaintiff's ability to recover in excess of the scheduled value of the mining equipment. It does not preclude Plaintiff from offering other evidence, including, but not limited to, evidence regarding the actual value of the equipment or extra-contractual damages, to the extent such other evidence is relevant and otherwise admissible.[8]

### E. MOTION TO STRIKE PORTIONS OF PLAINTIFF'S SUPPLEMENTAL PRETRIAL STATEMENT AND MOTION IN LIMINE REGARDING ARGUMENTS MADE IN PLAINTIFF'S SUPPLEMENTAL PRETRIAL STATEMENT

---

[7] For example, such evidence might be relevant should Defendant argue at trial that Plaintiff failed to mitigate its damages.

[8] In its Reply Brief, Defendant also seeks a ruling barring Plaintiff from introducing "expert post-loss valuation testimony" based on an "Income Value" valuation approach because Plaintiff has neither identified such an expert nor submitted an expert report on that valuation method. Def.'s Reply at 1-2 (Docket No. 161). Because Plaintiff has never indicated that it intends to introduce such expert testimony at trial, Defendant's request is premature. If Plaintiff attempts to add such an expert prior to or during trial, Defendant may raise this objection again at that time.

Plaintiff filed its initial Pretrial Statement in this case on October 15, 2004, prior to the Court's Opinion and Order deciding Defendants' summary judgment motions. (Docket No. 56). On June 10, 2005, Plaintiff filed a Supplemental Pretrial Statement. (Docket No. 117). Defendant has moved to strike the "Brief Statement of Material Facts" contained in Plaintiff's Supplemental Pretrial Statement on the grounds that it is repetitious, contains improper argument instead of facts, and improperly attempts to add new legal grounds on which to pursue a bad faith claim against Defendant. (Docket No. 140). Defendant also moves in limine to preclude Plaintiff from raising these allegedly "new" arguments at trial. Id.

Defendant's Motion to Strike the Brief Statement of Material Facts contained in Plaintiff's Amended Pretrial Statement is denied. The purpose of a pretrial statement is to apprise the Court and opposing parties of a litigant's positions, evidence, and witnesses. It is not a pleading and does not constitute "evidence." Thus, striking it would serve no discernable purpose at this juncture.

Defendant's Motion in Limine Regarding the Arguments Made in the Plaintiff's Supplemental Pretrial Statement is granted in part and denied in part. According to Gallatin, the new "facts" it has recited in its Supplemental Pretrial Statement and intends to introduce at trial are alleged instances of additional "bad faith" conduct by Defendant that occurred during this litigation after Gallatin filed its original pretrial statement. To the extent Defendant suggests that such evidence is *per se* inadmissible, its motion in limine is denied. There is no "bright line" rule that an insurer's actions during bad faith litigation are inadmissible in support of a bad faith

claim.  Hollock v. Erie Ins. Exch., 842 A.2d 409, 414 (Pa. Super. Ct. 2004), appeal granted in part, 878 A.2d 864 (Pa. 2005).  Rather, Pennsylvania courts have held that "'the broad language of section 8371 was designed to remedy all instances of bad faith conduct by an insurer, whether occurring before, during or after litigation,'" and that "'the conduct of an insurer during the pendency of litigation may be considered as evidence of bad faith under section 8371.'" Id. at 415 (quoting O'Donnell v. Allstate Ins. Co., 734 A.2d 901, 906-07 (Pa. Super. Ct. 1999)); see also W.V. Realty, Inc. v. Northern Ins. Co., 334 F.3d 306, 313-14 (3d Cir. 2003) (insurer's conduct during litigation relevant to bad faith where conduct shows insurer's intent to evade its obligations under the policy).

Thus, Gallatin may introduce evidence at trial regarding Defendant's actions during this litigation to the extent such evidence is relevant to the issue of bad faith, *i.e.*, whether Defendant lacked a reasonable basis for denying Gallatin benefits under the policy and that Defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim.  Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994).  Because, with one exception, other facts and evidence at trial will have a bearing on whether the particular "facts" set forth in Gallatin's Supplemental Pretrial Statement are relevant and admissible, Defendant's Motion in Limine is denied as premature.  Defendant is free to bring this motion again at an appropriate time during trial.

The one exception relates to Defendant's proposed valuation expert, Arthur Sullivan. Specifically, Defendant's Motion is granted to the extent Gallatin seeks to

argue at trial that Defendant's retention of valuation expert Arthur Sullivan is evidence of bad faith. <u>See</u> Supp. Pretrial Statement at 2. I recognize that in at least one Pennsylvania case, the court found in favor of a plaintiff on a bad-faith claim where the plaintiff alleged, among numerous other things, that the defendant had retained "defense-oriented experts to provide biased opinions not supported by evidence." <u>Hollock</u>, 842 A.2d at 412. The retention of Sullivan, however, does not fall within this category. Gallatin argues that Westchester's use of Sullivan as an expert is evidence of bad faith because Sullivan's methodology has no basis in Pennsylvania law and, in any event, Sullivan had never before applied that methodology. As set forth more fully in my opinion denying Gallatin's Motion in Limine to exclude Sullivan as an expert witness, however, these arguments are without merit. Although nothing in this opinion shall preclude Gallatin from subjecting Sullivan to vigorous cross-examination at trial in an attempt to discredit his testimony, there simply is no indication that Westchester's retention of Sullivan as an expert was anything other than a legitimate attempt to challenge Gallatin's valuation of damages and defend itself in litigation through the use of a valuation expert. Such conduct is not bad faith but a common and acceptable litigation tactic that Westchester had every right to employ.[9]

---

[9] Defendant makes similar arguments with respect to the testimony of a second expert, Robert Bernstein, Esq. Although Gallatin has not moved in limine to exclude Bernstein's testimony, it indicates in its Supplemental Pretrial Statement that it intends to argue at trial that Westchester's retention of Bernstein is evidence of bad faith. Supp. Pretrial Statement at 2. Although I agree with Defendant that Plaintiff's argument in this regard is weak, I simply do not have sufficient information before me with respect to Bernstein to make a definitive ruling on this issue at this time. Thus, I defer ruling on this issue unless and until it arises at trial.

14

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GALLATIN FUELS, INC., )<br>)<br>Plaintiff, )<br>)<br>-vs- )<br>) Civil Action No. 02-2116<br>)<br>WESTCHESTER FIRE INSURANCE COMPANY, )<br>)<br>Defendant. ) | |

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this   day of January, 2006, upon consideration of the parties' Motions in Limine and Defendant's Motion to Strike (Docket Nos. 122, 123, 124, 125, 130, 132, 134, 140), it is hereby ordered that the Motions are GRANTED in part, and DENIED in part, as follows:

1. Plaintiff's Motion in Limine Re: Exclusion of Documents, Testimony, Evidence and Argument of Advice of Counsel (Docket No. 130) is GRANTED to the extent that it seeks to exclude as evidence at trial any documents or other information that Defendant has withheld from Plaintiff as privileged. Plaintiff's Motion is DENIED in all other respects.

2. Plaintiff's Motion in Limine Re: Procedure for Presentation of Claims for Fees (Docket No. 132) is GRANTED in part and DENIED in part. For the reasons set forth in the accompanying Opinion, the Court will decide the issue of whether

attorney's fees should be awarded to Plaintiff and, if so, in what amount. Accordingly, Plaintiff may not present any evidence concerning attorney's fees or costs to the jury at trial.

3.  Plaintiff's Motion in Limine Re: Exclusion of Documents, Testimony, Evidence and Argument of Notice of Cancellation Prior to October 25, 2005 (Docket No. 134) is GRANTED to the extent it seeks to exclude at trial evidence that Defendant notified Plaintiff prior to October 25, 2002 that the insurance policy at issue in this litigation had been canceled.  Plaintiff's Motion is DENIED in all other respects.

4.  Defendant's Motion in Limine to Exclude Evidence of Defendant's Wealth Until the Court Rules that Sufficient Evidence Exists to Create a Jury Issue on Punitive Damages (Docket No. 122) is GRANTED.

5.  Defendant's Motion in Limine to Preclude the Use of the Reports and Recommendations of the Honorable Robert Mitchell, and Any Court Orders Concerning Those Reports and Recommendations as Trial Exhibits (Docket No. 123) is GRANTED.

6.  Defendant's Motion in Limine to Exclude Evidence of Intentional Destruction of the Subject Property (Docket No. 124) is GRANTED to the extent that it seeks to exclude at trial evidence that the insurance claim at issue in this litigation arose from Mon View Mining's intentional destruction of Plaintiff's mining equipment.

7. Defendant's Motion in Limine to Exclude Evidence that Plaintiff is Entitled to Recover in Excess of the Equipment's Scheduled Value (Docket No. 125) is

GRANTED.

8. Defendant's Motion to Strike Portions of Plaintiff's Supplemental Pretrial Statement (Docket No. 140) is DENIED.

9. Defendant's Motion in Limine Regarding the Arguments Made in the Plaintiff's Supplemental Pretrial Statement (Docket No. 140) is GRANTED to the extent it seeks to exclude at trial evidence that Defendant's retention of Arthur Sullivan as an expert witness is evidence of bad faith. Defendant's Motion is DENIED as premature in all other respects.

BY THE COURT:

<u>/S/  Donetta W. Ambrose</u>

Donetta W. Ambrose,
Chief U. S. District Judge