IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GALLATIN FUELS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No.  02-2116 |
| | ) |
| WESTCHESTER FIRE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION
# and
# ORDER OF COURT

The factual and procedural details of this case are well known to the parties, and I need not repeat them in detail here.  In short, Plaintiff, Gallatin Fuels, Inc. ("Plaintiff" or "Gallatin"), seeks payment under an insurance policy issued by Defendant Westchester Fire Insurance Company ("Defendant" or "Westchester") to Mon View Mining Corporation ("Mon View") for mining equipment that was destroyed or rendered unrecoverable on April 8, 2002, when the mine in which it was being used returned to its natural water level when the power to the mine was shut off after Mon View failed to pay outstanding utility bills.  Gallatin was named as a loss payee under the policy.  Gallatin also alleges that Westchester's actions constituted bad faith in violation of Pennsylvania law.

Plaintiff offers the expert testimony of George Hoffman ("Hoffman") on the issue of bad faith.  Pending is Defendant's Motion in Limine (Docket No. 139) seeking

to exclude certain portions of Hoffman's proposed testimony, including opinions based on speculation and conclusions that Westchester acted in bad faith.  The parties have represented that a hearing is not necessary on this issue.  Thus, I base my decision on the parties' submissions and attachments thereto.  See Oddi v. Ford Motor Co., 234 F.3d 136, 154-55 (3d Cir. 2000).  For the reasons set forth below, the Motion in Limine is granted in part and denied in part.

## I.  ANALYSIS

### A.  *DAUBERT* STANDARD AND RULE 702

In Daubert, the Supreme Court held that:

> [f]aced with a proffer of expert scientific testimony, ... the trial court judge must determine at the outset ... whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue.  This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

Daubert v. Merrell Dow Pharm., Inc. 509 U.S. 579, 592-93 (1993).  More recently, in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999), the Supreme Court clarified any confusion regarding the intended reach of the Daubert decision, by declaring that the trial judge must perform this "basic gatekeeping obligation" to all expert matters, not just "scientific" matters.  In the Third Circuit, the trial court's role as a "gatekeeper" announced in Daubert requires proof that: (1) the proffered witness is qualified as an expert; (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge; and (3) the expert's testimony must

2

"fit" the facts of the case.  In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-42 (3d Cir. 1994).  Thus, pursuant to Daubert, the gatekeeping function requires the court to ensure that the expert testimony is both reliable and relevant. Daubert, 509 U.S. at 589; Kumho Tire Co., 526 U.S. at 147.

As to the first requirement - qualification - the Court of Appeals for the Third Circuit has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more general qualifications."  Paoli, 35 F.3d at 741.  "Rule 702's liberal policy of admissibility extends to the substantive as well as the formal qualification of experts." Id.  Thus, an expert can qualify based on a broad range of knowledge, skills, training and experience.

The second inquiry focuses on methodology.  The inquiry into methodology is designed to ensure that an expert's opinions are based upon "'methods and procedures of science' rather than on subjective belief or unsupported speculation." Id. at 742.  Factors used to assess reliability include whether:  (1) the theory or technique can be tested; (2) the theory or technique has been peer reviewed; (3) there is a high rate of known or potential error; (4) there are standards of control; (5) the theory is "generally accepted"; (6) there is a sufficient relationship between the technique and methods which have been established to be reliable; (7) the expert's qualifications are sufficient; and (8) the method has been put to non-judicial uses.  See Magistrini v. One Hour Martinizing Dry Cleaning, 180 F. Supp. 2d 584, 594 (D.N.J. 2002), aff'd, 68 F. App'x 356 (3d Cir. 2003).  "Some courts also consider additional factors relevant in determining reliability, including: (i) whether the

expert's proposed testimony grows naturally and directly out of research the expert has conducted independent of the litigation . . . ; (ii) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. . . ; (iii) whether the expert has adequately accounted for alternative explanations . . . ; (iv) whether the expert is being as careful as he would be in his professional work outside of the litigation context . . . ; and (v) whether the field of expertise asserted by the expert is known to reach reliable results for the type of opinion proffered by the expert . . . ." Id. at 594-95 (citations omitted).

Although this list of factors is lengthy, not each factor will be relevant to every reliability analysis. The "test of reliability is 'flexible.'" Kumho, 526 U.S. at 141. According to the Supreme Court,  "Daubert's list of specific factors neither necessarily nor exclusively applies to all experts." Id. The relevance of the Daubert factors depends "on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Id. at 150 (internal quotation marks and citations omitted).

Finally, Daubert and Rule 702 require that the expert's testimony "fit" the facts of the case.  "'Fit' requires that the proffered testimony must in fact assist the jury, by providing it with relevant information, necessary to a reasoned decision of the case." Magistrini, 180 F. Supp. 2d at 595 (citing Paoli, 35 F.3d at 743).

## B.  HOFFMAN'S OPINIONS

According to his expert report, Hoffman has significant experience as an insurance claims adjuster and has testified approximately fifty times as a claims

adjuster at deposition or at trial.  Hoffman has not testified previously as an expert witness.  Hoffman Report at 1-2 (Docket No. 141, Ex. A).  Defendant does not challenge Hoffman's qualifications as a bad faith expert.  Rather, Defendant seeks to exclude portions Hoffman's testimony at trial on the grounds that Hoffman has expressed inadmissible opinions concerning the coverage available to Gallatin under the policy; has provided subjective interpretations of Westchester's actions and intent; and provided ultimate conclusions that Westchester has acted in bad faith.  Def.'s Mot. at 1-2.  Defendant argues that Hoffman's testimony must be limited to that which is relevant to whether Westchester lacked a reasonable basis for denying Gallatin's claim and, if so, whether it did so with knowledge of or reckless disregard for the absence of a reasonable basis.

As an initial matter, I note that Hoffman's testimony is not excludable simply because he proposes to testify with respect to Plaintiff's bad faith claims.  Although an insured is not required to prove an insurer's bad faith practices through expert testimony, such expert testimony is permissible if it is helpful to the trier of fact and is otherwise admissible.  See Bonenberger v. Nationwide Mut. Ins. Co., 791 A.2d 378, 382 (Pa. Super. Ct. 2002) ("[T]he decision whether to permit a witness to testify as an expert on bad faith is one that rests within the sound discretion of the trial court.").  Among other things, expert testimony may be appropriate with respect to issues such as insurance claims adjusting procedure, an insurer's compliance with industry customs and standards, and whether the insurer lacked a reasonable basis for denying an insured's claim.  Because Hoffman's proposed testimony is not *per se*

inadmissible, I will address each of Defendant's specific objections to that testimony in turn.

**1.  Application Of Insurance Policy To Gallatin's Loss**

Defendant first contends that Hoffman should not be permitted to testify as to his opinion on the application of the insurance policy to Gallatin's loss.  I agree. As Defendant correctly argues, Hoffman's opinions on the issue of contract construction would not assist the jury in understanding coverage, are based solely on Hoffman's subjective interpretation of the policy language, and are impermissible legal conclusions.  See McCrink v. Peoples Benefit Life Ins. Co., No. 2:04-CV-01068-LDD, 2005 WL 730688, at *4 (E.D. Pa. Mar. 29, 2005) (granting motion to strike portion of expert report opining on whether coverage should be provided under the policy).

For these reasons, Defendant's Motion is granted to the extent it seeks to preclude Hoffman from testifying as to his construction of the insurance policy and his application of this construction to Plaintiff's contract claim.  As explained more fully herein, however, Defendant's Motion is denied to the extent Hoffman's testimony would assist the fact-finder with respect to the issue of bad faith.  See Ford v. Allied Mut. Ins. Co., 72 F.3d 836, 841 (10th Cir. 1996) (permissible for expert to testify as to issue of bad faith as opposed to contract liability).

**2.  Opinions Concerning Violations Of Insurance Statutes**

Defendant next argues that it is inappropriate for Hoffman to testify as to his opinion on Westchester's violations of various insurance statutes, including

6

Pennsylvania's Unfair Insurance Practice Act ("UIPA") and the Unfair Claims Settlement Practices ("UCSP") regulations promulgated thereunder, as support for his opinion that Westchester has acted in bad faith.  Def.'s Br. at 4-5.  I disagree.  As an initial matter, the mere fact that Hoffman's testimony may rely in part on his understanding of the UIPA or UCSP does not render that testimony inadmissible. None of these statutory provisions or regulations are directly at issue in this case, and Hoffman's references to the same are ancillary to the ultimate issue of bad faith.  See Hangarter v. Provident Life & Accident Ins. Co., 373 F.3d 998, 1017 (9th Cir. 2004).   Furthermore, whether or not Westchester complied with applicable insurance statutes or regulations may be relevant as to whether Westchester acted reasonably and/or deviated from industry standards.  Indeed, as this Court has already stated, in denying Westchester's summary judgment motion on Plaintiff's bad faith claim:

> In summary, Gallatin has pointed to numerous failures by Westchester to comply with the requirements of the UIPA and UCSP.  Although each one individually would be insufficient to demonstrate the existence of a genuine issue of material fact as to Westchester's bad faith, the accumulation of them, combined with Westchester's other acts, are enough to be submitted to the trier of fact to determine whether Gallatin has proved its claim that Westchester has acted in bad faith.

April 15, 2005 Report & Recommendation (Docket No. 104) at 38, adopted by May 26, 2005 Order of Court (Docket No. 114).[1]

---

[1]  It is difficult to determine from Hoffman's expert report the specific UIPA/UCSP violations, if any, to which he intends to testify.  To the extent Hoffman seeks to testify at trial as to violations not previously raised and not relied upon by the Court in response to Defendant's summary judgment motions, Defendant may renew its objections to such testimony at that time.

I disagree with Defendant that the probative value of this evidence is substantially outweighed by the danger of unfair prejudice in this case.  I do recognize that there is some potential for prejudice and/or confusion associated with allowing Hoffman to present such testimony at trial because the ultimate issue is not whether Defendant violated the UIPA and/or UCSP but whether it lacked a reasonable basis for denying benefits and, if so, whether it knew or recklessly disregarded that fact.  Terletsky v. Prudential Prop. & Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994).  Thus, a violation of the UIPA or UCSP is not a *per se* violation of the bad faith standard. I find, however, that this danger does not substantially outweigh the probative value of the evidence in this case which, as explained in the Magistrate Judge's Report and Recommendation, is high.  See Fed. R. Evid. 403. Moreover, to the extent the danger of prejudice or confusion does exist, such danger may be cured by an appropriate jury instruction.[2]

### 3. Opinion That Westchester Acted In Bad Faith And Opinion As To Subjective Intent

Finally, Defendant argues that Hoffman should not be permitted to opine at trial that Westchester acted in bad faith.  I agree.  Although expert testimony may be helpful to the fact-finder in a bad faith case, an expert may not give an opinion as to the ultimate legal conclusion that an insurer acted in "bad faith" in violation of

---

[2] Defendant cites the non-precedential opinion of the Court of Appeals for the Third Circuit in Dinner v. United Servs. Auto. Ass'n Cas. Ins. Co., 29 F. App'x 823 (3d Cir. 2002), as support for its argument that its Motion in Limine should be granted on this point.  The holding in Dinner, however, was simply that the trial judge did not abuse his discretion in precluding Plaintiff's expert from testifying as to UIPA and UCSP violations at trial.  The Court did not hold that such testimony was never admissible.  Id. at 827-28.

applicable law.  Hangarter, 373 F.3d at 1016 (expert testimony that insurer deviated from industry standards admissible; testimony that insurer actually acted in bad faith inadmissible); McCrink, 2005 WL 730688 at *4 & n.1.  Hoffman's opinion on this purely legal question is outside his area of expertise and simply is not relevant or helpful to the jury.  See Kubrick v. Allstate Ins. Co., No. Civ. A. 01-6541, 2004 WL 45489, at *16 (E.D Pa. Jan. 7, 2004) (citing cases), aff'd, 121 F. App'x 447 (3d Cir. 2005). Accordingly, Defendant's Motion is granted to the extent it seeks to preclude Hoffman from testifying at trial that Westchester acted in bad faith.

Hoffman also shall be precluded from testifying at trial as to the subjective intent of the claims handlers responsible for Gallatin's claim or any other individual. For example, Hoffman may not testify, as set forth in his report, that it was Westchester's "intention from day one" to deny coverage to Gallatin.  Hoffman Report at 10 (Docket No. 141, Ex. A).  Likewise, Hoffman may not testify as to what he believes another individual "thought", "believed", or "felt."[3]  An expert simply is not in any better position than the jury to assess another's subjective intent.  See, e.g., Steadfast Ins. Co. v. Auto Mktg. Network, Inc., No. 97 C 5696, 2004 WL 783356, at *6 (N.D. Ill. Jan. 28, 2004).

In short, while Hoffman's testimony with respect to issues such as insurance claims adjusting procedure, Westchester's compliance with industry customs and

---

[3] In one section of his report, for example, Hoffman opines "in reading the documents and the report that Ferguson and Westchester had decided that the named insured would not be around nor had the wherewithal to pursue this claims.  I think they felt very comfortable in the fact which was eluded [sic] to in attorney Johnson's early letter that he felt that a loss payee stood in the footprint of the named insured."  Hoffman Report at 15.  Such opinions are inadmissible at trial.

standards, and whether Westchester lacked a reasonable basis for denying Gallatin's claim may be relevant, testimony that Westchester actually acted in bad faith or testimony regarding Westchester's subjective intent is not helpful to the fact-finder and may not be presented at trial.

## II. <u>CONCLUSION</u>

For all of the reasons set forth above, Defendant's Motion in Limine to Limit the Scope of Testimony on Bad Faith by George Hoffman is granted to the extent that it seeks to exclude testimony by Hoffman as to the application of the insurance policy to Gallatin's loss, the subjective intent of the claims handlers responsible for Gallatin's claim or any other individual, and the ultimate issue of whether Defendant acted in bad faith.  Defendant's Motion is denied in all other respects.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GALLATIN FUELS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| -vs- | ) |
| | ) Civil Action No.  02-2116 |
| WESTCHESTER FIRE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **18th** day of January, 2006, after careful consideration and for the reasons set forth in the accompanying Opinion, Defendant's Motion in Limine to Limit the Scope of Testimony on Bad Faith by George Hoffman (Docket No. 139) is GRANTED to the extent it seeks to exclude as evidence at trial the expert testimony of George Hoffman as to the application of the insurance policy at issue to Plaintiff's loss; to the subjective intent of the claims handlers responsible for Plaintiff's claim or any other individual; and to the ultimate issue of whether Defendant acted in bad faith.  Defendant's Motion is DENIED in all other respects.

BY THE COURT:


/S/  Donetta W. Ambrose

Donetta W. Ambrose,
Chief U. S. District Judge