IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GALLATIN FUELS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 02-2116 |
| | ) |
| WESTCHESTER FIRE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION
## and
# ORDER OF COURT

The factual and procedural details of this case are well known to the parties, and I need not repeat them in detail here.  In short, Plaintiff, Gallatin Fuels, Inc. ("Plaintiff" or "Gallatin"), seeks payment under an insurance policy issued by Defendant Westchester Fire Insurance Company ("Defendant" or "Westchester") to Mon View Mining Corporation ("Mon View") for mining equipment that was destroyed or rendered unrecoverable on April 8, 2002, when the mine in which it was being used returned to its natural water level when the power to the mine was shut off after Mon View failed to pay outstanding utility bills.  Gallatin was named as a loss payee under the policy.  Gallatin also alleges that Westchester's actions constituted bad faith in violation of Pennsylvania law.

Defendant offers the expert testimony of George Priest ("Priest") with respect to two issues.  First, Priest offers his opinion as to whether Plaintiff's claim with

respect to the equipment left in the Mathies Mine qualifies as "loss or damage" resulting from an external cause and, thus, is covered under the insurance policy. Second, Priest responds to the opinion of Plaintiff's "bad faith" expert, George Hoffman. See Priest Report at 4. Pending is Plaintiff's Motion in Limine (Docket No. 135) seeking to exclude Priest's testimony at trial on various grounds. The parties have represented that a hearing is not necessary on this issue. Thus, I base my decision on the parties' submissions and attachments thereto. See Oddi v. Ford Motor Co., 234 F.3d 136, 154-55 (3d Cir. 2000). For the reasons set forth below, the Motion in Limine is granted in part and denied in part.

## I. ANALYSIS

### A. *DAUBERT* STANDARD AND RULE 702

In Daubert, the Supreme Court held that:

> [f]aced with a proffer of expert scientific testimony, ... the trial court judge must determine at the outset ... whether the expert is proposing to testify to (1) scientific knowledge that (2) will assist the trier of fact to understand or determine a fact in issue. This entails a preliminary assessment of whether the reasoning or methodology underlying the testimony is scientifically valid and of whether that reasoning or methodology properly can be applied to the facts in issue.

Daubert v. Merrell Dow Pharm., Inc. 509 U.S. 579, 592-93 (1993). More recently, in Kumho Tire Co., Ltd. v. Carmichael, 526 U.S. 137, 141 (1999), the Supreme Court clarified any confusion regarding the intended reach of the Daubert decision, by declaring that the trial judge must perform this "basic gatekeeping obligation" to all expert matters, not just "scientific" matters. In the Third Circuit, the trial court's

role as a "gatekeeper" announced in Daubert requires proof that: (1) the proffered witness is qualified as an expert; (2) the expert must testify about matters requiring scientific, technical, or specialized knowledge; and (3) the expert's testimony must "fit" the facts of the case. In re Paoli R.R. Yard PCB Litig., 35 F.3d 717, 741-42 (3d Cir. 1994). Thus, pursuant to Daubert, the gatekeeping function requires the court to ensure that the expert testimony is both reliable and relevant. Daubert, 509 U.S. at 589; Kumho Tire Co., 526 U.S. at 147.

As to the first requirement - qualification - the Court of Appeals for the Third Circuit has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more general qualifications." Paoli, 35 F.3d at 741. "Rule 702's liberal policy of admissibility extends to the substantive as well as the formal qualification of experts." Id. Thus, an expert can qualify based on a broad range of knowledge, skills, training and experience.

The second inquiry focuses on methodology. The inquiry into methodology is designed to ensure that an expert's opinions are based upon "'methods and procedures of science' rather than on subjective belief or unsupported speculation." Id. at 742. Factors used to assess reliability include whether: (1) the theory or technique can be tested; (2) the theory or technique has been peer reviewed; (3) there is a high rate of known or potential error; (4) there are standards of control; (5) the theory is "generally accepted"; (6) there is a sufficient relationship between the technique and methods which have been established to be reliable; (7) the expert's qualifications are sufficient; and (8) the method has been put to non-judicial

uses. See Magistrini v. One Hour Martinizing Dry Cleaning, 180 F. Supp. 2d 584, 594 (D.N.J. 2002), aff'd, 68 F. App'x 356 (3d Cir. 2003).  "Some courts also consider additional factors relevant in determining reliability, including: (i) whether the expert's proposed testimony grows naturally and directly out of research the expert has conducted independent of the litigation . . . ; (ii) whether the expert has unjustifiably extrapolated from an accepted premise to an unfounded conclusion. . . . ; (iii) whether the expert has adequately accounted for alternative explanations . . . ; (iv) whether the expert is being as careful as he would be in his professional work outside of the litigation context . . . ; and (v) whether the field of expertise asserted by the expert is known to reach reliable results for the type of opinion proffered by the expert . . . ." Id. at 594-95 (citations omitted).

Although this list of factors is lengthy, not each factor will be relevant to every reliability analysis.  The "test of reliability is 'flexible.'"  Kumho, 526 U.S. at 141.  According to the Supreme Court,  "Daubert's list of specific factors neither necessarily nor exclusively applies to all experts." Id.  The relevance of the Daubert factors depends "on the nature of the issue, the expert's particular expertise, and the subject of his testimony." Id. at 150 (internal quotation marks and citations omitted).

Finally, Daubert and Rule 702 require that the expert's testimony "fit" the facts of the case.  "'Fit' requires that the proffered testimony must in fact assist the jury, by providing it with relevant information, necessary to a reasoned decision of the case." Magistrini, 180 F. Supp. 2d at 595 (citing Paoli, 35 F.3d at 743).

**B. PRIEST'S QUALIFICATIONS**

As an initial matter, Plaintiff argues that Priest is not qualified to testify as an expert in this case, particularly with respect to bad faith. Specifically, Plaintiff argues that Priest is not qualified to testify as to "bad faith" or accepted practices in the industry because he lacks sufficient claims handling or claims adjusting experience. Pl.'s Br. at 7-11. Plaintiff contrasts Priest with its own proposed bad faith expert, George Hoffman, who purports to have 47 years of claims adjusting experience. I disagree that Priest is unqualified to testify as an expert on these issues.

As Plaintiff itself recognizes, "it would be an abuse of discretion to exclude expert testimony simply because the trial court does not deem the proposed expert to be the *best qualified* or because the proposed expert does not have the specialization the court considers most appropriate." United States v. Van Wyk, 83 F. Supp. 2d 515, 518 (D.N.J. 2000) (quoting Holbrook v. Lykes Bros. S.S. Co., 80 F.3d 777, 782 (3d Cir. 1996)), aff'd, 262 F.3d 405 (3d Cir. 2001); see also Paoli, 35 F.3d at 741 (noting that the Court of Appeals for the Third Circuit has "eschewed imposing overly rigorous requirements of expertise and [has] been satisfied with more general qualifications.").

As set forth more fully in his expert report, resume, and deposition testimony, Priest is a professor of law and economics at Yale Law School, and teaches courses in insurance, insurance regulation, and contracts, among others. Priest has served as a Yale law professor since 1980 and currently holds a chair as the John M. Olin

5

Professor of Law and Economics. Priest received a Bachelor of Arts degree from Yale in 1969 and a law degree from the University of Chicago in 1973. Priest has conducted extensive research in the field of law and economics, insurance, the regulation of insurance, and insurance practices. He also has taught and published in the fields of insurance and the economics of insurance for many years. Priest has presented a number of lectures on insurance and the operation of the property/casualty insurance industry as well as other economics-related issues to state legislators, regulators, and state and federal judges. Additionally, numerous courts have recognized Priest as an expert. See Priest Expert Report, App. I & II.

The above is only a partial synopsis of Priest's experience with and knowledge of insurance and the insurance industry. I agree with Defendant that Priest's knowledge, experience, and education gained over twenty-five years spent studying insurance, the property and casualty insurance industry, the regulation of insurance, and insurance practices, among other things, more than qualify him to serve as an expert on issues such as the fundamental principles of insurance, the operation of the insurance industry, and the reasonableness of Westchester's claims handling procedures in this action.[1] Because Priest is qualified to serve as an expert under Federal Rule of Evidence 702, the portion of Plaintiff's Motion in Limine challenging

---

[1] Plaintiff also argues that Priest is unqualified as an expert on bad faith because he has refused to testify as to what conduct constitutes, or is admissible to show, bad faith under Pennsylvania law. Pl.'s Br. at 10. As explained more fully below, expert testimony with respect to the ultimate legal issue of bad faith is inadmissible as a matter of law. Thus, Priest's refusal to opine on what constitutes "bad faith" is neither improper nor evidence that he is unqualified to testify as to issues relevant to the issue of bad faith, such as the reasonableness of Defendant's actions.

6

Priest's qualifications is denied.[2]

## C. **PRIEST'S OPINIONS**

### 1. **Priest's Opinion on Coverage**

Plaintiff's first set of objections to Priest's proposed testimony pertain to Priest's opinions concerning the coverage sought by Gallatin under the applicable insurance policy. Specifically, Plaintiff objects to Priest's opinion that Gallatin's loss is not an insurable loss as a matter of economics and/or public policy. As an initial matter, I disagree with Plaintiff to the extent it argues that Priest should not be allowed to testify regarding issues such as the insurance industry and market, the different forms of insurance available, and industry-wide insurance practices, <u>to the extent that</u> such issues are relevant to Gallatin's claims and Westchester's defenses.[3] These are areas in which the typical juror is not well-versed and, therefore, Priest's testimony would assist the jury in this regard.

I agree with Plaintiff, however, that Priest may not testify at trial that the cause of Gallatin's loss was not external as a matter of law or that the risk was otherwise *per se* uninsurable, whether as a matter of economics, public policy, or under the specific terms of the insurance policy. Priest's opinions on these issues simply would not assist the jury in understanding Gallatin's coverage or the specific policy at issue. See <u>McCrink v. Peoples Benefit Life Ins. Co.</u>, No. 2:04-CV-01068-LDD,

---

[2] Of course, Plaintiff is free to note Priest's lack of claims handling experience and any other perceived weaknesses of Priest's testimony through vigorous cross-examination at trial.

[3] Whether or not specific opinions of this nature are admissible is a question more appropriately decided on a case-by-case basis at trial.

2005 WL 730688, at *4 (E.D. Pa. Mar. 29, 2005) (granting motion to strike portion of expert report opining on whether coverage should be provided under the policy). Moreover, as set forth in Magistrate Judge Mitchell's April 15, 2005 Report and Recommendation denying Defendant's Motion for Summary Judgment (which I adopted on May 26, 2005) (Docket Nos. 104, 114), the Court already has considered and rejected these same arguments. See Report and Recommendation at 22-24 (rejecting Defendant's argument that, as a matter of law, the events that led to Gallatin's loss do not constitute "physical loss or damage . . . from any external cause"). Defendant may not resurrect these arguments at trial.

For these reasons, Plaintiff's Motion is granted to the extent it seeks to preclude Priest from testifying at trial that the cause of Gallatin's loss was not external as a matter of law or that the risk was otherwise *per se* uninsurable, whether as a matter of economics, public policy, or under the specific terms of the insurance policy. Further, Priest may not testify as to his construction of the insurance policy at issue or the application of the policy to Plaintiff's loss.[4] Plaintiff's Motion is denied, however, to the extent Priest's testimony would assist the fact-finder with respect to information concerning the insurance industry and market, the different forms of insurance available, industry-wide insurance practices, and other similar areas, to the extent that such issues are relevant to Gallatin's claims and Westchester's defenses as determined at trial.

---

[4] In a separate Opinion and Order, I also have excluded the testimony of Plaintiff's proposed expert, George Hoffman, on this subject.

## 2. Priest's Opinion On "Bad Faith"

Plaintiff's remaining objections to Priest relate to his proposed testimony on bad faith. Although not required, expert testimony on the issue of bad faith is permissible if it is helpful to the trier of fact and is otherwise admissible. See Bonenberger v. Nationwide Mut. Ins. Co., 791 A.2d 378, 382 (Pa. Super. Ct. 2002) ("[T]he decision whether to permit a witness to testify as an expert on bad faith is one that rests within the sound discretion of the trial court."). Among other things, expert testimony may be appropriate with respect to issues such as insurance claims adjusting procedure, an insurer's compliance with industry customs and standards, and whether the insurer lacked a reasonable basis for denying an insured's claim. Because Priest's proposed testimony is not *per se* inadmissible, I will address each of Plaintiff's specific objections to that testimony in turn.

First, Plaintiff objects to the extent Priest intends to testify at trial about facts or opinions not contained in his deposition testimony or expert report. Pl.'s Br. at 11-13. This portion of Plaintiff's Motion is denied as premature as there is no indication that Defendant intends Priest to testify as to anything other than the information contained in these sources. Indeed, Defendant indicates in its Response Brief that, with respect to bad faith, Priest will testify, at most, to the incidents and occurrences identified in Plaintiff's expert's report and Priest's rebuttal to those allegations. Def.'s Resp. (Docket No. 157) at 7 n.2. If Priest attempts to testify as to any additional alleged bad-faith incidents or information at trial, Plaintiff may object again at that time.

Second, Plaintiff argues that Priest should be precluded from testifying at trial as to what conduct does or does not constitute bad faith or what constitutes an acceptable practice in the claims handling industry because he refused to testify about such matters in his deposition. I disagree. After reviewing the deposition testimony cited in Plaintiff's Motion, there is no evidence that Priest refused to testify as to matters relevant to the issue of bad faith, such as whether or not Westchester acted reasonably. Rather, it appears that Priest refused to testify as to legal conclusions such as what conduct constitutes "bad faith" under Pennsylvania law or what he thinks the term "bad faith" means under Pennsylvania law. As Defendant correctly notes, expert testimony with respect to the ultimate legal issue of bad faith is inadmissible as a matter of law. See, e.g., McCrink, 2005 WL 730688 at *4 & n.1; Kubrick v. Allstate Ins. Co., No. Civ. A. 01-6541, 2004 WL 45489, at *16 (E.D Pa. Jan. 7, 2004) (citing cases), aff'd, 121 F. App'x 447 (3d Cir. 2005). Thus, Priest's refusal to opine on what constitutes "bad faith" or acceptable claims handling practices under Pennsylvania law is neither improper nor evidence that he is unqualified to testify as to issues relevant to the issue of bad faith, such as the reasonableness of Defendant's actions. Accordingly, this portion of Plaintiff's Motion in Limine is denied.

Third, Plaintiff argues that Priest should be precluded from testifying as a fact witness because he has no first-hand knowledge of the facts of this case. Specifically, Plaintiff contends that Priest should not be permitted to render his "version" of the facts or otherwise testify at trial as to the factual events of the case.

Pl.'s Br. at 15-21.  This portion of Plaintiff's Motion is denied.  As an initial matter, Defendant agrees that Priest is an expert witness, not a fact witness.  Def.'s Resp. at 7.  Thus, there should be no dispute at trial on this issue.  To the extent Plaintiff objects to Priest's recitation of the "facts" in his expert report, the Federal Rules of Civil Procedure require experts to prepare a report which contains, among other things, a complete statement of the opinions to be expressed, the basis for those opinions, and the data or information considered by the expert in forming the opinions.  See Fed. R. Civ. P. 26(a)(2).  Moreover, the Federal Rules of Evidence do not preclude an expert from testifying as to the factual bases he used to reach his conclusions.  See Lewis v. Rego Co., 757 F.2d 66, 74 (3d Cir. 1985); see also Fed. R. Evid. 705.[5]

## II. **CONCLUSION**

For all of the reasons set forth above, Plaintiff's Motion in Limine to Exclude the Opinion of Professor Priest is granted to the extent it seeks to preclude Priest from testifying at trial that the cause of Gallatin's loss was not external as a matter of law or that the risk was otherwise *per se* uninsurable, whether as a matter of economics, public policy, or under the specific terms of the insurance policy. Further, Priest may not testify as to his construction of the insurance policy at issue or the application of the policy to Plaintiff's loss. Plaintiff's Motion is denied in all other respects.

---

[5] Nothing in this Opinion shall preclude Plaintiff from raising other objections, such as prejudice, at trial to specific testimony regarding the bases of Priest's testimony.

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA


| | |
|---|---|
| GALLATIN FUELS, INC., | ) |
| | ) |
| | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No.  02-2116 |
| | ) |
| | ) |
| WESTCHESTER FIRE INSURANCE COMPANY, | ) |
| | ) |
| | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## ORDER OF COURT

AND NOW, this **19th** day of January, 2006, after careful consideration and for the reasons set forth in the accompanying Opinion, Plaintiff's Motion in Limine to Exclude the Testimony and Opinions of Professor Priest (Docket No. 135) is GRANTED to the extent it seeks to preclude Priest from testifying at trial that the cause of Plaintiff's loss was not external as a matter of law or that the risk was otherwise *per se* uninsurable, whether as a matter of economics, public policy, or under the specific terms of the insurance policy.  Further, Priest may not testify as to his construction of the insurance policy at issue or the application of the policy to

Plaintiff's loss.  Plaintiff's Motion is DENIED in all other respects.


BY THE COURT:



<u>/S/  Donetta W. Ambrose</u>

Donetta W. Ambrose,
Chief U. S. District Judge