IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GALLATIN FUELS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 02-2116 |
| | ) |
| WESTCHESTER FIRE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

# OPINION
## and
## ORDER OF COURT

### SYNOPSIS

Pending is Defendant Westchester Fire Insurance Company's Motion for Post-Judgment Relief. (Docket No. 250). In its Motion, Defendant requests judgment as a matter of law pursuant to Federal Rule of Civil Procedure 50, or, in the alternative, a new trial pursuant to Federal Rule of Civil Procedure 59. Plaintiff, Gallatin Fuels, Inc., filed a Brief in Opposition. (Docket No. 257). After a careful review of the submissions of the parties, Defendant's Motion is denied in its entirety.

### I. BACKGROUND

The factual and procedural details of this case are well known to the parties, and I need not repeat them in detail here. In short, Plaintiff, Gallatin Fuels, Inc. ("Plaintiff" or "Gallatin"), filed this suit seeking payment under an insurance policy issued by Defendant Westchester Fire Insurance Company ("Defendant" or

"Westchester") to Mon View Mining Corporation ("Mon View") for mining equipment that was destroyed or rendered unrecoverable on April 8, 2002, after the mine in which it was being used returned to its natural water level when the power to the mine was shut off after Mon View failed to pay outstanding utility bills. Gallatin was named as a loss payee under the policy. Gallatin also alleged that Westchester's actions constituted bad faith in violation of 42 Pa. Cons. Stat. Ann. § 8371.

A jury trial began in this case on February 6, 2006 and concluded on February 21, 2006. On February 14, 2006, after the close of Gallatin's case, Defendant moved for a directed verdict as to (1) Gallatin's intentional business decision not to exercise its contractual rights; (2) fortuity; (3) bad faith; and (4) external cause. (Docket Nos. 187, 189, 191, 193). Defendant's Motions for directed verdict were denied. (Docket Nos. 195-197, 203). I also denied Defendant's renewed Motions for directed verdict on the intentional business decision, fortuity, and external cause issues. (Docket Nos. 204-206).

At the conclusion of the trial, the jury returned a verdict in favor of Gallatin on both counts. With respect to Gallatin's bad-faith claim under § 8371, the jury found that Defendant lacked a reasonable basis for denying Gallatin benefits under the policy and that Defendant knew or recklessly disregarded its lack of reasonable basis in denying the claim. The jury awarded Gallatin a net total of $1.325 million on its claim for payment under the insurance policy and awarded Gallatin $20 million

in punitive damages on the bad faith claim.[1]  On March 28, 2006, I granted Defendant's Pre-Judgment Motion challenging Gallatin's punitive damages award and entered an Order reducing that award to $4.5 million because the original award was unconstitutionally excessive.  See Docket No. 233.  In accordance with the jury's verdict and my March 28, 2006 Order, I entered judgment in favor of Plaintiff on that same date in the amount of $1.325 million on the contract claim and $4.5 million on the bad faith claim in the form of punitive damages.  See Docket No. 237.

On April 14, 2006, Defendant filed the instant Motion for Post-Judgment Relief and Brief in Support.  (Docket Nos. 250-251).  Gallatin filed its Brief in Opposition on May 3, 2006.  (Docket No. 257).  Defendant's Motion is now ripe for my review.[2]

## II. **STANDARDS OF REVIEW**

Rule 50(b) of the Federal Rules of Civil Procedure provides that a district court "may grant a renewed motion for judgment as a matter of law if 'there is no legally sufficient evidentiary basis for a reasonable jury to have found for' the prevailing party.  Fed. R. Civ. P. 50(b); Olefins Trading v. Han Yang Chem. Corp., 9 F.3d 282, 288 (3d Cir. 1993).  The 'legally sufficient evidentiary basis' has also been characterized as a 'minimum quantum of evidence,' Keith v. Truck Stops Corp., 909 F.2d 743, 745 (3d Cir.1990), or even as 'any rational basis for the verdict.' Bhaya v. Westinghouse Elec.

---

[1] The jury awarded Gallatin $1.925 million (the maximum available under the policy) on its contract claim, but found that Gallatin's damages should be reduced by $600,000 because Gallatin did not adequately mitigate its damages.  In accordance with this finding, I deducted $600,000 from the $1.925 million Gallatin was entitled to recover under the policy, for a net result of $1.325 million.

[2] In the final sentence of its Motion, Defendant requests oral argument.  Motion at 9.  Because the issues presented in Defendant's motion have been adequately briefed, I do not believe oral argument would be of assistance to me.  Therefore, the request for oral argument is denied.

Corp., 832 F.2d 258, 259 (3d Cir.1987)." PXRE Corp. v. Terra Nova Ins. Co. Ltd., 76 F. App'x 485, 2003 WL 22293204, at *4 (3d Cir. Oct. 06, 2003). The evidence must be viewed in the light most favorable to the non-moving party. Id. (citing Mosley v. Wilson, 102 F.3d 85, 89 (3d Cir.1996)).

Pursuant to Rule 59, a motion for a new trial may be granted "for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States." Fed. R. Civ. P. 59(a)(1). One such reason is where "the verdict is contrary to the great weight of the evidence." Roebuck v. Drexel Univ., 852 F.2d 715, 735 (3d Cir. 1988). In such a case, however, a motion for a new trial is limited to those circumstances "where 'a miscarriage of justice would result if the verdict were to stand.'" Olefins Trading, 9 F.3d at 289.

When reviewing a jury verdict "a District Court . . .has an 'obligation . . . to uphold the jury's award if there exists a reasonable basis to do so.' Motter v. Everest & Jennings, Inc., 883 F.2d 1223, 1230 (3d Cir.1989). '[T]he court may not vacate or reduce the award merely because it would have granted a lesser amount of damages.' Id. A new trial is warranted based 'upon [a] showing that the jury verdict resulted from passion or prejudice.' Hurley v. Atlantic City Police Dep't, 174 F.3d 95, 114 (3d Cir.1999) (quoting Dunn v. HOVIC, 1 F.3d 1371, 1383 (3d Cir.1993)). '[T]he size of the award alone [is not] enough to prove prejudice and passion.' Id." Evans v. Port Auth., 273 F.3d 346, 351-52 (3d Cir. 2001).

### III. LEGAL DISCUSSION

4

A. **Motion for Judgment as a Matter of Law**

   1. **Breach of Contract Claim**

      a. **Fortuity**

In support of its Motion for Judgment as a Matter of Law on this issue, Defendant asserts that the evidence was insufficient to establish that Gallatin's loss was fortuitous from the standpoint of the putative insured. Westchester argues that it was undisputed that Mon View and Gallatin were aware that the power was being terminated, that the loss was inevitable, and that no one protected the property from inevitable loss. Motion at 3-4. Westschester also contends that the undisputed evidence shows that Gallatin could have prevented the power from being shut off and/or could have sought to have the power turned back on or to retrieve its equipment. Id.

Defendant's Motion is denied with respect to this issue. To the extent Defendant has raised these arguments in prior Motions in this case (including motions for summary judgment and motions for directed verdict), nothing in Defendant's instant Motion or Brief has persuaded me to reverse the previous rulings.

In addition, the parties agree that fortuity is a question of law for the court to decide. In my post-trial Opinion and Order dated March 28, 2006 (Docket No. 233), I indicated that my legal conclusion as to fortuity was based in part on the jury's findings, set forth on the verdict slip, that (1) Defendant did not prove by a preponderance of the evidence that Plaintiff made intentional business decisions

5

in its dealings with Mon View Mining Corporation that resulted in the termination of power to the mine; and (2) Defendant did not prove by a preponderance of the evidence that after Plaintiff became aware that the power to the mine was to be shut off for non-payment of electrical service, Plaintiff made intentional business decisions not to exercise reasonably available contractual or legal rights that, if exercised, would have prevented the claimed loss. See Verdict Slip, questions 4-6. In addition, I found no other evidence presented at trial that, even when viewed in the light most favorable to Defendant, would support a conclusion that Plaintiff's loss was non-fortuitous under the above, or any other, theories.[3] Again, nothing in Defendant's instant Motion or Brief has persuaded me to reverse this ruling.[4]

Consequently, Defendant's Motion in this regard is denied.

### b. Cancellation/Non-Reinstatement of Policy

Defendant next argues for judgment as a matter of law on the grounds that the undisputed evidence shows that Gallatin was not covered under the Policy because the policy had been cancelled before the date of the loss and Gallatin, as a loss payee, had to reinstate the Policy through payment of the premium due. Motion at 4. I disagree.

As Defendant acknowledges, the Magistrate Judge already ruled on this issue,

---

[3] Thus, Defendant's argument that judgment as a matter of law and/or a new trial is required because the verdict slip improperly limited the fortuity determination is without merit.

[4] The fact that the jury answered "yes" when asked if Gallatin knew, prior to the claimed loss, that the power to the mine was to be shut off for non-payment of electrical service does not change this result. See Def.'s Br. at 10-11 (citing special verdict question No. 5). This finding does not mean that Gallatin could have prevented the loss or that the loss was not "unplanned and unintentional" within the meaning of the definition of fortuity.

and I adopted the Magistrate Judge's findings in this regard. Nothing in Defendant's instant Motion or Brief has persuaded me to reverse the my previous rulings on this issue. In addition, the jury was asked on the verdict slip if Westchester proved that it requested that Plaintiff pay premiums due under the Policy and that Plaintiff did not pay those premiums. The jury answered "no" to this question.

### 2. **Bad Faith Claim**

#### a. **Defenses to Coverage**

Defendant first argues that the undisputed evidence established that Westchester had multiple, well-founded defenses to coverage, each of which bars a finding of bad faith as a matter of law. Motion at 4-5. In particular, Westchester refers to the defenses of fortuity, cancellation, and misrepresentation, and claims that these defenses provided Westchester with reasonable grounds to deny coverage. See id.

I disagree. The jury expressly considered and rejected these arguments, as reflected in its specific finding that Defendant lacked a reasonable basis to deny Plaintiff's claim.[5] I find that the evidence at trial was more than sufficient to support the jury's finding.

#### b. **Standing**

Defendant next argues that loss payees such as Gallatin lack standing to bring a bad faith claim under 42 Pa. Cons. Ann. § 8371. Motion at 5. As an initial matter,

---

[5] I also denied Defendant's Motion for Directed Verdict (Docket No. 191) on this issue.

7

it appears that this is the first time Defendant has raised this argument. Thus, Defendant's Motion is denied for this reason alone. In addition, Defendant has not provided any persuasive authority supporting the position that Gallatin, as a standard loss payee with rights independent of the insured, does not have standing to sue the insurer for bad faith.

### c. **Dispute as to Claim Amount**

Defendant next argues that bad faith may not be found (nor punitive damages awarded), when the claim amount is in dispute, the insurer's position as to the amount prevails, and the insurer prevails on the necessity for a reduction in damages due to the claimant's failure to mitigate. Motion at 5.

I disagree. The cases Defendant cites in support of this proposition are very fact-specific and distinguishable from the case at hand. Here, the trial evidence was sufficient to support a conclusion that Westchester knew the value of the lost equipment was greater than its interpretation of the policy limits. Yet, Westchester did not offer to pay Gallatin any portion of its claim. In addition, the evidence of Westchester's course of conduct in handling the claim shows that Westchester failed to apprise Gallatin of the progress of its investigation or provide meaningful information about its position on policy limits or the claim amount. For all of these reasons, I find that, to the extent the claim amount was disputed, this dispute did not preclude a finding of bad faith. See Klinger v. State Farm Mut. Auto. Ins. Co., 115 F.3d 230, 234-35 (3d Cir. 1997) (suggesting that a insurer's failure to make an offer of what reasonably was due could be bad faith even if an arbitrator ultimately awarded

less than what the insured wanted).

### 3. <u>**Punitive Damages**</u>

Defendant first argues that the punitive damages award violates federal due process to the extent it is predicated on claims handling conduct alleged by Gallatin, as such conduct lacks a factual nexus to the liability-causing conduct on which bad faith was submitted to the jury. Motion at 6. This argument is without merit. As an initial matter, consistent with my instructions, the jury specifically found that Westchester lacked a reasonable basis to deny Plaintiff's claim and that Westchester knew or recklessly disregarded its lack of reasonable basis in denying the claim. These were jury questions that Westchester proposed and Plaintiff opposed. Thus, the jury found bad faith on Defendant's terms, and not on the broader definition urged by Plaintiff (i.e., that improper claims handling, even when the insurer had a reasonable basis to deny the claim, is still bad faith). Moreover, the weight of authority on this issue has held that, at least when an unreasonable denial of a claim is involved, other evidence, including evidence concerning improper claims handling, may be relevant to bad faith. <u>See, e.g.</u>, <u>W.V. Realty, Inc. v. Northern Ins. Co.</u>, 334 F.3d 306, 313-14 (3d Cir. 2003) (insurer's conduct during litigation relevant to bad faith where conduct shows insurer's intent to evade its obligations under the policy); <u>O'Donnell v. Allstate Ins. Co.</u>, 734 A.2d 901, 906-07 (Pa. Super. Ct. 1999).

Defendant also argues that the evidence did not establish that Westchester's defenses to coverage were so lacking a reasonable basis, and/or that Westchester engaged in any other conduct, as to reach the level of outrageousness warranting

9

the imposition of punitive damages. Motion at 6. I disagree. The jury was appropriately instructed on the issue of punitive damages, and the evidence was more than sufficient to support a finding that an award of punitive damages was appropriate in this case.

## B. Motion for New Trial

### 1. Breach of Contract Claim

#### a. Fortuity

Defendant first argues that a new trial is necessary because the Court erroneously placed the burden of proof on Westchester to show that Gallatin's loss was not fortuitous. Defendant contends that the burden should have been on Gallatin to show that the loss was fortuitous. Motion at 6. This argument is without merit. As an initial matter, the Magistrate Judge already decided this issue in ruling on Defendant's Summary Judgment Motions, and I adopted the Magistrate Judge's findings. Nothing in Defendant's instant Motion or Brief has persuaded me to reverse my previous rulings on this issue. See Koppers Co. v. Aetna Cas. And Sur. Co., 98 F.3d 1440, 1447 (3d Cir. 1996) (discussing burden of proof on fortuity) (citing Intermetal Mexicana v. Ins. Co., N.A., 866 F.2d 71 (3d Cir. 1989)). To the extent Plaintiff had even a *prima facie* burden on the fortuity issue (which it did not), there is simply no evidence that such burden was not met.

#### b. Cancellation

Defendant argues that the Magistrate Judge erred in holding that Defendant had a duty to notify Plaintiff that the Policy was cancelled and that the Court erred

in adopting that ruling and advising the jury of the same. Motion at 6-7. I disagree. Nothing in Defendant's instant Motion or Brief has persuaded me to reverse my previous rulings on this issue.

### c. Loss Payee

Defendant argues that I erred by directing the jury at trial that Gallatin was entitled to coverage under the Policy as a loss payee. Defendant argues that this direction was incorrect because the Policy required Gallatin to pay the premium due in order to reinstate the Policy. I disagree. This portion of Defendant's Motion is denied for the reasons set forth in Section III.A.1.b, supra.

### d. Mitigation

Defendant argues that the interrogatories on the special verdict slip regarding mitigation contradicted the jury instructions on mitigation and materially prejudiced the jury's consideration of compensatory damages. Motion at 7; Def.'s Br. at 15. Defendant argues that the jury instruction stated that if the jury found failure to mitigate, then Plaintiff was only entitled to recover the amount it "would have expended through the particular courses of action it could have taken to avoid the loss." Defendant states that, contrary to this instruction, the special verdict form (questions 7-9) merely had the jury state the amount by which Plaintiff's damages "should be reduced" because Plaintiff did not adequately mitigate its damages. Defendant argues that, because of this "confusion," it is unclear whether the jury intended Plaintiff's compensatory damages to be $1.325 million (the amount I awarded), or whether $1.325 million was the amount to be deducted, so

that the award would be $600,000 (the mitigation amount). Def.'s Br. at 15.

I disagree. Aside from the fact that Defendant actually prevailed on the mitigation issue, the jury instruction on mitigation was Defendant's own proposed instruction and, therefore, Defendant cannot now complain that the instruction was erroneous. Furthermore, there is no reason to believe that the jury did not follow the jury instructions in arriving at its figure on the verdict slip. Question 9 on the verdict slip specifically instructs the jury to state the amount "by which Plaintiff's damages should be reduced" and tells the jury that the Court will deduct such amount from the amount Plaintiff can recover under the Policy. Thus, there is no question that the jury intended the Court to reduce the $1.925 million compensatory award by $600,000 and not that $600,000 should be the amount awarded.

### e. **Misrepresentation**

In its Brief, Defendant argues that a new trial is warranted because the jury instructions with respect to Defendant's misrepresentation defense were erroneous. Specifically, Defendant argues that the Court charged the jury on a "willfully and intent to deceive" standard, but that Pennsylvania law requires only a "bad faith" presentation of a known false statement. Def's Br. at 18. This argument is without merit. As an initial matter, Defendant does not raise this argument as ground for a new trial in its Motion, only in its Brief. In addition, I agree with Gallatin that the instruction was consistent with Pennsylvania law on this issue. See Pl.'s Br. at 18-21.

12

2. **Bad Faith Claim**

   a. **Claim Handling Evidence**

   Defendant argues that the Court erred by admitting evidence related to Plaintiff's contention that Defendant engaged in bad faith in the handling of Plaintiff's claim. Motion at 7. This portion of Defendant's Motion is denied for the reasons set forth in Section III.A.3, supra.

   b. **Jury Instruction - Reasonable Basis**

   Defendant argues that the Court erred by failing to instruct the jury that if it found that Westchester had any reasonable basis for denying Gallatin's claim, then it could not find in favor of Gallatin on the bad faith claim. I disagree. The jury instructions clearly stated that Plaintiff was required to prove that Defendant lacked a reasonable basis for denying its claim. No further questions were necessary on this issue.

   c. **Jury Instruction - Prejudice**

   Defendant argues that the Court erred by advising the jury of certain legal findings such as (a) that the Court had ruled against Defendant on the cancellation issue; and (b) that the court had ruled that Gallatin's loss was covered unless Westchester established a defense. Defendant contends that such statements unduly prejudiced the jury. I disagree. To the extent the Court so advised the jury, the statements were proper and not unduly prejudicial.

   d. **Jury Instruction - Bad Faith/Punitive Damages**

   Defendant argues that the Court erred by submitting the issues of bad faith

liability and punitive damages to the jury since these issues are statutorily reserved for the Court. Defendant failed to adequately address this argument in its Brief, and, thus, this portion of the Motion is denied for this reason alone. In addition, Defendant raised a similar argument in its proposed jury instructions before trial, and I rejected the same. I find no basis to reverse my previous ruling on this issue. See Klinger, 115 F.3d at 236.

### e. Bad Faith Verdict

Defendant argues that the verdict on bad faith was against the weight of the evidence. Motion at 8. I disagree. I find that the evidence was more than sufficient to support a verdict in favor of Plaintiff on the bad faith claim.

### 3. Punitive Damages

#### a. Outrageousness

Defendant argues that the Court erred by omitting a question on outrageousness on the verdict slip since outrageousness is a necessary element for a finding of punitive damages. Motion at 7, 8. I disagree. The jury instructions clearly discussed the element of outrageousness in connection with punitive damages. The jury charge also instructed the jury that they were not required to award punitive damages if they made a finding of bad faith. There is no requirement that a separate question regarding outrageousness appear in the verdict slip, and there is no indication that the jury failed to follow the jury instructions in reaching its verdict.

#### b. Excessiveness

Defendant argues that a new trial should be awarded because the punitive damages verdict, even as reduced by the Court, is unconstitutionally excessive. Motion at 9. I disagree. In my Opinion and Order dated March 28, 2006 reducing the punitive damages award (Docket No. 233), I held that $4.5 million would satisfy legitimate objectives without implicating due process concerns. Nothing in Defendant's instant Motion or Brief has persuaded me to reverse my previous ruling on this issue.

### c. Other Arguments

Defendant argues that a new trial is necessary because Plaintiff was allowed to introduce evidence regarding improper claims handling. This portion of Defendant's Motion is denied for the reasons set forth in Section III.A.3, supra.

Defendant also argues that the punitive damages award was against the weight of the evidence. Motion at 9. I disagree. To the contrary, the evidence at trial was more than sufficient to support a finding of bad faith and an award of punitive damages.

* * * * * * * * * * * * * * * * * * * * * * * * * * * * * *

IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GALLATIN FUELS, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| -vs- | ) |
| | ) Civil Action No. 02-2116 |
| | ) |
| WESTCHESTER FIRE INSURANCE COMPANY, | ) |
| | ) |
| Defendant. | ) |

AMBROSE, Chief District Judge.

## **ORDER OF COURT**

AND NOW, this **2nd** day of June, 2006, upon careful consideration, and for the reasons set forth in the Opinion accompanying this Order, it is Ordered that Westchester Fire Insurance Company's Motion for Post-Judgment Relief (Docket No. 250), is denied.

BY THE COURT:

_____
Donetta W. Ambrose,
Chief U. S. District Judge